UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

———————————————————————
                                          )
                                          )
IN RE APPLICATION OF KAISER               )
GROUP INTERNATIONAL, INC.                 )          **Misc. Case No. 10-287**
AND KAISER ENGINEERS, INC.                )
FOR AN ORDER TO CONDUCT                   )
DISCOVERY                                 )
                                          )
                                          )
———————————————————————)

## MEMORANDUM OPINION

Before the Court are petitioners Kaiser Group International, Inc. (Kaiser International) and Kaiser Engineers, Inc.'s (Kaiser Engineers) Motion to Treat Petitioners' Application for Discovery as Conceded (ECF No. 3), and respondent International Bank for Reconstruction and Development's (IBRD) Motion to Quash Subpoena of Third-Party IBRD (ECF No. 7). Both stem from a Petition for an Order Granting Discovery for Use in a Foreign Proceeding (ECF No. 1).

Upon consideration of petitioners' Motion to Treat Petitioners' Application for Discovery as Conceded, the opposition thereto (ECF No. 9), petitioners' reply (ECF No. 13), applicable law, and the entire record, petitioners' motion will be denied as moot for the reasons set forth below.

Upon consideration of respondent's Motion to Quash Subpoena of Third-Party IBRD, the opposition thereto (ECF No. 11) and declaration in support thereof (ECF No. 12), respondent's reply (ECF No. 14), applicable law, and the entire record, respondent's motion will be granted due to lack of subject-matter jurisdiction for the reasons set forth below.

I.      **BACKGROUND**

A.  **Underlying Dispute**

This discovery issue stems from a contract dispute between Kaiser Netherlands—a foreign subsidiary of petitioner Kaiser International and affiliate of petitioner Kaiser Engineers—and ArcelorMittal Ostrava, formerly known as Nova Hut. Nova Hut planned to construct a steel-producing minimill, which it financed with a $250 million loan from the International Finance Corporation (IFC). Nova Hut conditionally assigned its rights under the contract to the IFC. *See In re Kaiser Group Int'l*, 399 F.3d 558 (3d Cir. 2005) (setting out the details of the underlying dispute).

In 2000, Kaiser International and certain subsidiaries filed a petition in Delaware Bankruptcy Court under Chapter 11 of the Bankruptcy Code. The IFC subsequently filed a Proof of Claim in the bankruptcy case, seeking recovery from Kaiser International based on its assignment of rights under the contract. In January 2001, a dispute arose over the contract and related letter of credit, when Nova Hut improperly drew down on the letter of credit and terminated the underlying contract, allegedly at the direction of the IFC. After several filings in the bankruptcy case, the IFC filed a motion to dismiss Kaiser International's Third Amended Complaint for lack of subject-matter jurisdiction. In this motion, the IFC claimed that international-organization immunity shielded it from suit under the International Organizations Immunity Act (IOIA), 22 U.S.C. § 288a(b), and under the bankruptcy code, 11 U.S.C. § 106(b). The Bankruptcy Court ruled that the IFC expressly waived its immunity by filing a Proof of Claim, so the court retained subject-matter jurisdiction over the case. The IFC appealed to the District Court of Delaware, arguing also that the claims in the Third Amended Complaint were beyond the scope of its waiver. The District Court ultimately agreed with the IFC, reversing the

Bankruptcy Court and finding that the claims were beyond the scope of the waiver. *See In re Kaiser Group Int'l, Inc.*, 308 B.R. 666 (D. Del. 2004); *see also In re Kaiser Group Int'l, Inc.*, 302 B.R. 814 (D. Del. 2003). Kaiser International appealed this decision to the United States Court of Appeals for the Third Circuit. The Third Circuit reversed the District Court and remanded to the Bankruptcy Court, finding that the claims were not beyond the scope of the waiver. *See In re Kaiser Group*, 399 F.3d 558. The Third Circuit found, therefore, that the IFC waived its immunity by filing a Proof of Claim.

During this litigation, Nova Hut moved to stay the proceedings and compel arbitration, which the Bankruptcy Court denied, but which the District Court granted on appeal. *See In re Kaiser Group Int'l, Inc.*, 307 B.R. 449 (D. Del. 2004). In 2005, the IFC renewed its motion to stay the proceedings and compel arbitration, which the Bankruptcy Court granted. In 2004, Kaiser Netherlands initiated separate arbitration proceedings against Nova Hut in the International Chamber of Commerce (ICC). In 2006, the ICC arbitration panel awarded judgment in large part to Nova Hut. In 2006, after the entry of this award of judgment, Nova Hut filed a motion to lift the stay on proceedings, also moving for summary judgment based on the ICC award. In 2007, Kaiser International filed a cross-motion for partial summary judgment and a motion requesting discovery. Kaiser International was seeking discovery regarding IFC's interference in Nova Hut during the contractual dispute. The Bankruptcy Court denied this request for discovery, finding that all discovery should take place during arbitration. *See In re Kaiser Group Int'l, Inc.*, 375 B.R. 120, 123 (Bankr. D. Del. 2007) (denying summary judgment and citing to hearing in which the court denied the discovery motion). The District Court denied leave to appeal this discovery ruling. *See In re Kaiser Group Int'l, Inc.*, 400 B.R. 140 (D. Del.

2009). The Third Circuit affirmed the District Court. *See In re Kaiser Group Int'l, Inc.*, No. 09-1565 (3d Cir. Mar. 22, 2010).

On April 6, 2010, petitioners commenced two arbitration proceedings in the ICC against Nova Hut and the IFC. On April 29, 2010, petitioners filed in this Court a Petition for an Order Granting Discovery for Use in a Foreign Proceeding (ECF No. 1). Petitioners argued that they were entitled to such discovery pursuant to 28 U.S.C. § 1782. Petitioners' proposed subpoena summons the World Bank to testify at a deposition. Although petitioners' subpoena states that they are seeking discovery from the "World Bank," respondents understand this request to mean that they are seeking discovery from the IBRD—a component of the World Bank. *See Mendaro v. World Bank*, 717 F.2d 610, 611 (D.C. Cir. 1983) (stating that the IBRD is "commonly referred to as World Bank"). On June 7, 2010, the Court temporarily granted this unopposed petition (Order, ECF No. 4), ordering that any motions to quash the subpoena be filed within 14 days of service of that order. The IBRD timely moved to quash.

**B.  Structure of Relevant International Organizations**

Respondent IBRD and the International Development Association (IDA) together comprise the World Bank. The IBRD and the IDA join with three other institutions—the IFC, the Multilateral Investment Guarantee Agency, and the International Centre for Settlement of Investment Disputes—to comprise the World Bank Group. The relevant groups here are the IBRD and the IFC.

The IBRD was created in 1944 under Articles of Agreement. *See* Articles of Agreement of the International Bank for Reconstruction and Development, Dec. 27. 1945, 60 Stat. 1440, *as amended*, 16 U.S.T. 1942 (IBRD Articles). The President subsequently designated the IBRD a "public international organization" entitled to the protections of the IOIA. *See* Exec. Order No.

9751, 11 Fed. Reg. 7713 (1946). The IBRD Articles provide for limited waiver of immunity: "Actions may be brought against the Bank only in a court of competent jurisdiction in the territories of a member in which the Bank has an office, has appointed an agent for the purpose of accepting service or notice of process, or has issued or guaranteed securities." IBRD Articles, art. VII, § 3.

The IFC was created in 1955 under its own Articles of Agreement. *See* Articles of Agreement of the International Finance Corporation, May 25, 1955, 7 U.S.T. 2197, *as amended*, 24 U.S.T. 1760 (IFC Articles). The President subsequently designated the IFC as a "public international organization" entitled to the protections of the IOIA. *See* Exec. Order 10680, 21 Fed. Reg. 7647 (1956). The IFC Articles state the purpose of the IFC in relation to the IBRD: "The purpose of the Corporation is to further economic development by encouraging the growth of productive private enterprise in member countries, particularly in the less developed areas, thus supplementing the activities of the International Bank for Reconstruction and Development (hereinafter called the Bank)." IFC Articles, art. I. The Articles further clarify the legal relationship between the IFC and the IBRD: "The Corporation shall be an entity separate and distinct from the Bank. . . . Nothing in this Agreement shall make the Corporation liable for the acts or obligations of the Bank, or the Bank liable for the acts or obligations of the Corporation." *Id.*, art. IV, § 6.

The IBRD and the IFC each have their own Board of Directors, but the Executive Directors on these Boards are generally the same people. The World Bank Group has one President, who also is chairman of the Bank's Board of Executive Directors and president of each of the five organizations that comprise the World Bank Group. The Executive Vice President of the IFC, but not of the IBRD, reports to this President. The IBRD's certificate of

disclosure of corporate affiliations and financial interests, as required by this Court's Local Civil

Rule 7.1, states that the IFC is a parent company, subsidiary, or affiliate of the IBRD (ECF No.

8).

## II.   DISCUSSION

### A. The Court Will Deny as Moot Petitioners' Motion to Treat Petitioners' Application for Discovery as Conceded.

The Court will deny petitioners' motion as moot. On June 7, 2010, the Court temporarily

granted petitioners' petition (Order, ECF No. 4 (granting Petition, ECF No. 1)). While this order

was being processed by the Court, petitioners filed this motion on June 9, 2010 (ECF No. 3),

requesting that the Court grant the original petition. The parties were served with the Court's

order on June 10, 2010. Because the Court had already ruled on the petition by the time that

petitioners filed the present motion, the motion is moot.

### B. The Court Will Grant Respondent's Motion to Quash Subpoena of Third-Party IBRD.

Before the Court reaches the merits of this discovery dispute, it must consider whether it

has subject-matter jurisdiction to entertain the dispute. The Court will only have jurisdiction over

an international organization if the organization has waived its immunity. The IBRD has not

waived its immunity.

As a general rule, as an international organization, the IBRD is absolutely immune from

suit and judicial process:

> International organizations, their property and their assets, wherever located, and by
> whomsoever held, shall enjoy the same immunity from suit and every form of judicial
> process as is enjoyed by foreign governments, except to the extent that such organizations
> may expressly waive their immunity for the purpose of any proceedings or by the terms
> of any contract.

IOIA, 22 U.S.C. § 288a(b). This includes immunity from discovery, because discovery is a type

of judicial process. *See Polak v. Int'l Monetary Fund*, 657 F. Supp. 2d 116, 122 (D.D.C. 2009)

(Urbina, J.); *see also Foremost-McKesson, Inc. v. Islamic Republic of Iran*, 905 F.2d 438, 449 (D.C. Cir. 1990).

The issue here is whether the IBRD expressly waived its immunity. There is no dispute that the IFC waived its own immunity in the bankruptcy proceeding by filing a Proof of Claim. *See In re Kaiser Group*, 399 F.3d at 569–70. Petitioners argue that when the IFC waived its immunity in the bankruptcy proceeding, it was acting as an agent of the IBRD, so its waiver of immunity is imputed to the IBRD. Respondents argue (1) that the IFC was not acting as an agent of the IBRD in the bankruptcy proceeding, and (2) that IFC's waiver of immunity was limited to the bankruptcy proceeding. The Court agrees with respondents.

If the IFC was acting as an agent of the IBRD, then the IBRD would have waived its immunity, at least with respect to the bankruptcy proceeding. *See Transamerica Leasing, Inc. v. La Republica de Venezuela*, 200 F.3d 843, 848 (D.C. Cir. 2000); *Gilson v. Republic of Ireland*, 682 F.2d 1022, 1026 n.16, 1029–30 (D.C. Cir. 1982). The threshold question, therefore, is whether the IFC was acting as an agent of the IBRD when it filed a Proof of Claim. Petitioners argue that the IFC is the IBRD's agent on several grounds: (1) the IBRD exercises the "requisite degree of control" over the IFC; and (2) the IBRD "benefitted from the IFC's filing of the Proof of Claim." (Pets.' Opp'n at 6–8.) The Court disagrees with both assertions.

The IFC's Articles provide the clearest proof that there is no agency relationship between the IBRD and the IFC. They unequivocally state that the IFC is an "entity separate and distinct from" the IBRD, and the IBRD shall not be "liable for the acts or obligations" of the IFC. IFC Articles, art. IV, § 6. Thus, the Articles directly state that the IFC is not an agent of the IBRD, because the IBRD is not liable for the IFC's actions.

Furthermore, the IBRD does not exercise the requisite amount of control over the IFC to establish agency. "Agency is the fiduciary relationship that arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and *subject to the principal's control*, and the agent manifests assent or otherwise consents so to act." Restatement (Third) of Agency § 1.01 (2006) (emphasis added). As respondent's corporate disclosure states, the IFC is a subsidiary or affiliate of the IBRD. There is also significant overlap in the leadership of the two organizations. But this is not sufficient to create a principal-agent relationship. There is only an agency relationship when the principal has:

> manifested its desire for the subsidiary to act upon the parent's behalf, the subsidiary has consented so to act, the parent has the right to exercise control over the subsidiary with respect to matters entrusted to the subsidiary, and *the parent exercises its control in a manner more direct than by voting a majority of the stock in the subsidiary or making appointments to the subsidiary's Board of Directors*.

*Transamerica Leasing*, 200 F.3d at 849, *quoted in Doe I v. Exxon Mobil Corp.*, 573 F. Supp. 2d 16, 31 (D.D.C. 2008) (emphasis added); *see also United States v. Bestfoods*, 524 U.S. 51, 69 (1998) (recognizing the distinction of corporate personalities and stating that "it is entirely appropriate for directors of a corporation to serve as directors of its subsidiary, and that fact alone may not serve to expose the parent corporation to liability for its subsidiary's acts"). Even if the parent has the right to control the subsidiary, it must actually exercise that control. Although the IBRD and the IFC have substantial leadership in common, they are still separate legal entities that do business separately. A parent-subsidiary relationship, therefore, does not in itself create a principal-agent relationship, and there are not enough other indicia of control to establish an agency relationship. In addition to a lack of control, the IBRD and the IFC's relationship does not meet the other requirements of an agency relationship. There is no indication that the IBRD manifested direct or indirect assent to the IFC that it wanted it to act on its behalf, or that the IFC assented to so act.

Finally, the IBRD did not sufficiently benefit from the IFC's filing of a Proof of Claim to establish agency. Immunity is to be construed narrowly, *Mendaro*, 717 F.2d at 611, and immunity under the IOIA "should be construed as *not waived* unless the particular type of suit would *further* the Bank's objectives," *Atkinson v. Inter-Am. Dev. Bank*, 156 F.3d 1335, 1339 (D.C. Cir. 1998) (emphasis in original). Further, "[t]he requirement of an express waiver suggests that courts should be reluctant to find that an international organization has inadvertently waived immunity when the organization might be subjected to a class of suits which would interfere with its functions." *Mendaro*, 717 F.2d at 617. If the Court were to find that the IBRD had waived its immunity, then discovery could proceed freely against the IBRD. This discovery would be a burden on—not a benefit to—the IBRD, and it could interfere with its functions as a public international organization committed to lending money to combat poverty. Further, the IBRD has not been involved in any of the underlying disputes, litigation, or arbitration. The IBRD has no financial stake in the outcome of this case. Although the IFC has a significant financial stake in the case, the IBRD and the IFC are separate legal entities with separate purposes and strategies. Because the IBRD did not benefit from the IFC's filing of a Proof of Claim, there is no agency relationship.

The Court therefore finds that the IFC did not act as an agent of the IBRD when it waived its own immunity in the bankruptcy proceeding by filing a Proof of Claim. The Court does not need to reach respondents' proposed alternate ground for quashing the subpoena, regarding whether the IFC's waiver of immunity was limited to the bankruptcy proceeding. Because the Court does not have subject-matter jurisdiction over this dispute, the Court cannot reach the merits of the dispute and must quash the subpoena requesting discovery.

**III.**    <u>**CONCLUSION**</u>

For the reasons stated herein, the Court will deny as moot petitioners' Motion to Treat Petitioners' Application for Discovery as Conceded and will grant respondent's Motion to Quash Subpoena of Third-Party IBRD, will quash the subpoena of the IBRD, and will vacate the Court's order of June 7, 2010 (ECF No. 4).

A separate order consistent with this memorandum opinion shall issue this date.

Signed by Royce C. Lamberth, Chief Judge, on August 13, 2010.